38 F.3d 1217
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of Decisions
Without Reported Opinions" appearing in the Federal
Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206
for rules regarding the citation of unpublished opinions.)
United States Court of Appeals, Sixth Circuit.

UNITED STATES of America, Plaintiff–Appellee,

v.

James L. EWING, Defendant–Appellant.

No. 94–3010.
|
Oct. 18, 1994.

On Appeal from the United States District Court for the
Southern District of Ohio, No. 93–00101; George C. Smith,
District Judge.

**Synopsis**
S.D.Ohio

AFFIRMED.

**Procedural Posture(s):** On Appeal.

Before: GUY and BATCHELDER, Circuit Judges; and
McCALLA, District Judge. *

**Opinion**

PER CURIAM.

*1 Defendant, James L. Ewing, was convicted of conspiracy
to distribute cocaine base, in violation of 21 U.S.C. §
841(a)(1), and possession with intent to distribute in excess
of five grams of cocaine base, in violation of 21 U.S.C.
§§ 841(a)(1) and 841(b)(1)(B)(iii). On appeal, Ewing
contends the district court erred (1) in dismissing an earlier
indictment without prejudice under the Speedy Trial Act,
18 U.S.C. §§ 3161 et seq.; (2) in not dismissing count 2 of
a later indictment on the grounds of vindictive prosecution;
and (3) in sentencing him as a career offender pursuant to
United States Sentencing Guidelines § 4B1.1. For the

following reasons, we find no merit to these arguments and
affirm.

I.

Since none of the issues raised on appeal involve the facts
leading to Ewing's arrest, they will not be discussed. Suffice
it to say that on November 5, 1992, Columbus police officers
arrested Ewing and charged him with offering to sell a
controlled substance in violation of Ohio law. At that time
state authorities detained Ewing at the Franklin County Jail.

Also on November 5, 1992, an ATF special agent caused a
criminal complaint to be filed against Ewing in the district
court. That same day a magistrate judge issued a warrant
for Ewing's arrest, and the United States Marshal's Service
lodged a federal detainer against Ewing at the County Jail.

On November 13, 1992, the state drug charge against Ewing
was dismissed. Thus, as of that date, Ewing was being held
in the Franklin County Jail solely on the basis of the federal
detainer. According to the district court, it appears that the
Franklin County Sheriff's Department was aware that the
state charge had been dropped, but did not inform the federal
agency of this fact.

A federal grand jury initially indicted Ewing on December
17, 1992, 35 days after he was detained solely on the basis
of the federal detainer. The indictment charged Ewing and
Kevin Edwards with one count of conspiracy to distribute and
possess in excess of 5 grams of cocaine base, in violation
of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). As
part of this count, Ewing and Edwards also were charged
with possessing firearms to protect the cocaine base and the
proceeds of the cocaine base distribution from others, in
violation of 21 U.S.C. § 846.

On December 31, 1992, Ewing filed a motion to dismiss the
indictment, based on a violation of the Speedy Trial Act,
and requested an oral hearing. Without holding a hearing,
the district court found that the filing of the detainer was
equivalent to an arrest on November 13, 1993, "because it
was, at that time, the only basis for [Ewing's] continued
incarceration." (App. 84.) The court then held that a violation
of the Act had occurred because Ewing was not indicted
until more than 30 days after his "arrest." Exercising its

discretion under 18 U.S.C. § 3162(a)(2), the court dismissed the indictment without prejudice.

Ewing was reindicted on May 26, 1993. The new indictment charged him with one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), which included a firearms charge brought under 21 U.S.C. § 846, and one count of possession with intent to distribute in excess of five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. § 2.

**\*2** Ewing filed motions to dismiss the indictment based upon prosecutorial vindictiveness and a speedy trial violation. Both of these motions were overruled.

A jury trial commenced on August 2, 1993. Three days later, the jury returned a verdict finding Ewing guilty of both counts. The court sentenced Ewing to 300 months in prison, to be followed by four years of supervised release. The court also ordered Ewing to pay a special assessment of $100.

## II.

Ewing's first assignment of error concerns the district court's dismissal of the initial indictment without prejudice. The decision to dismiss with or without prejudice for noncompliance with the Speedy Trial Act is within the discretion of the district court. *United States v. Taylor,* 487 U.S. 326, 336 (1988). The Act enumerates three factors that trial courts must consider when making this decision: (1) the seriousness of the offense; (2) the facts and circumstances that led to the dismissal; and (3) the impact of reprosecution on the administration of the Act and upon justice. 18 U.S.C. § 3162(a)(2). A district court's judgment on how these considerations balance "should not lightly be disturbed." *Taylor,* 487 U.S. at 337.

The district court, in a written order dismissing the case without prejudice, began its analysis by observing that it must evaluate the three factors enumerated in the Speedy Trial Act. The court's order went on to give the following specific reasons for its decision:

> With regard to the first factor, the offense, conspiracy to distribute more than five (5) grams of crack cocaine, with a firearm specification, is a very serious offense. As to the

second factor, the Court finds that this dismissal was caused by an unfortunate administrative oversight, and there is no indication or allegation of bad faith on the part of any agency involved.

> In connection with the third factor, defendant has proffered evidence he argues demonstrates prejudice. After carefully considering defendant's proffer, the Court finds that, given that the delay was relatively brief, defendant was not prejudiced thereby. The Court finds that the reprosecution in this case would serve the ends of justice.

(App. 84–85) (footnote omitted).

We agree with the district court's analysis. The first factor to be considered is the seriousness of the crime. Felony drug charges, such as those here, are generally treated as serious offenses. *See United States v. Kottmyer,* 961 F.2d 569, 572 (6th Cir.1992). The second factor to be considered is the facts and circumstances that led to the dismissal. In this case, the district court found the reason for the delay was an "unfortunate administrative oversight." This is not an instance of prosecutorial bad faith or an attempt to take tactical advantage of a delay. "Where there is no affirmative misconduct by either party, the court's conclusion that this second factor authorizes dismissal with or without prejudice is a matter within its discretion." *United States v. Pierce,* 17 F.3d 146, 149 (6th Cir.1994). The third factor to be considered is the impact of a reprosecution on the administration of justice and on the administration of the Speedy Trial Act. Because the delay was not purposeful and Ewing has not shown that he was prejudiced by the delay, [1] this factor also favors dismissal without prejudice. *See United States v. Jones,* 887 F.2d 492, 495 (4th Cir.1989), *cert. denied,* 493 U.S. 1081 (1990); *United States v. Williams,* 711 F.2d 748, 751 (6th Cir.), *cert. denied,* 464 U.S. 986 (1983). Therefore, we hold that the district court did not abuse its discretion by dismissing the initial indictment without prejudice.

**\*3** In Ewing's next assignment of error, he contends that the second count of the later indictment should be dismissed on the grounds of vindictive prosecution. According to Ewing, the initial indictment charged him with one count of conspiracy to distribute cocaine base and named Edwards as a co-conspirator. Exercising his statutory right, he filed a motion to dismiss this indictment for a violation of the Speedy Trial Act. The court sustained this motion and dismissed the action without prejudice. He then was "reindicted for

conspiracy to distribute cocaine base without any named co-conspirator(s) and was charged in an additional count with possession with the intent to distribute cocaine base." Ewing maintains that this "new" possession charge resulted from prosecutorial vindictiveness. We disagree.

The standard in this circuit for evaluating claims of prosecutorial vindictiveness is "whether, in the particular factual situation presented, there existed a 'realistic likelihood of vindictiveness' for the prosecutor's augmentation of the charges." *United States v. Andrews,* 633 F.2d 449, 453 (6th Cir.1980), *cert. denied,* 450 U.S. 927 (1981). In determining whether a "realistic likelihood of vindictiveness" exists, two factors must be weighed. First, the court must determine the prosecutor's stake in deterring the exercise of a defendant's rights. Second, the court must review the prosecutor's actual conduct. If the court finds there is a "realistic likelihood of vindictiveness," the government bears the burden of disproving it. *Id.* at 456.

Here, nothing in the record indicates that the district court was presented with any fact suggesting a "realistic likelihood of vindictiveness" on the part of the prosecutor. Although Ewing's successful motion for dismissal of the initial indictment required some repetition of prosecutorial efforts, in that it compelled the reindictment of Ewing, we do not believe this burden, viewed in this pretrial context, was likely to elicit a vindictive response. Moreover, we have examined the prosecutor's actual conduct and can find no evidence of vindictiveness. Accordingly, we find no merit to this claim.

Ewing's third assignment of error is the district court's classification of him as a career offender under U.S.S.G. § 4B1.1. We review a district court's factual findings that underlie the application of a guideline provision for clear error. *United States v. Garner,* 940 F.2d 172, 174 (6th Cir.1991). However, whether those facts as determined by the district court warrant the application of a particular guideline provision is purely a legal question that we review de novo. *Id.*

Section 4B1.1 provides that:

*Career Offender*

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a

crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

**\*4** U.S.S.G., Guidelines Manual, § 4B1.1 (Nov. 1993). [2]

Section 4B1.2(1) and its commentary define "crime of violence" as follows:

(1) The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1). The November 1, 1993, version of Application Note 2 to section 4B1.2 states:

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.,* expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another. Under this section, the conduct of which the defendant was convicted is the focus of inquiry. [3]

Ewing contends that the district court erred in counting his 1987 burglary conviction in Ohio as a crime of violence. The question thus is whether this conviction falls under 🚩section 4B1.2(1)(ii), either because it was a burglary of a "dwelling," or because it "otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another." The government maintains that Ewing's 1987 conviction qualifies as a "burglary of a dwelling." The district court, however, classified Ewing's prior conviction as a crime of violence because it found it posed a serious potential risk of injury to others. Therefore, we will first review the district court's mode of analysis and examine Ewing's prior conviction under the "otherwise" clause, and only if we disagree with the court's finding on this matter will we consider the government's position.

The details with respect to Ewing's 1987 burglary conviction are as follows. Ewing broke into a car that was parked in a secured, underground garage. The garage was attached to an apartment building, and to enter the garage one needed to use a special key or had to enter the apartment building first. The apartment building also required a key or a resident to "buzz" an individual inside. Apparently, Ewing was successful in getting a resident to "buzz" him into the building. The district court also noted that Ewing had used a knife to pry open windows and unlock the cars.

In 🚩*United States v. Lane,* 909 F.2d 895 (6th Cir.1990), *cert. denied,* 498 U.S. 1093 (1991), this court concluded that attempted burglary in Ohio falls under the "otherwise" clause of 🚩18 U.S.C. § 924(e)(2)(B)(ii)[4] because it is a "crime which 'involves conduct that presents a serious potential risk of physical injury to another.' " 🚩*Land,* 909 F.2d at 903. The panel based its conclusion on the fact that the Ohio burglary statute requires the actual or likely presence of a person in the burglarized structure. The court observed:

**\*5** "The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." The fact that [the defendant] did not complete the burglary offense does not diminish the serious potential risk of injury to another arising from an attempted burglary.

*Id.* (citation and footnote omitted). For the same reasons, many other courts have classified attempted burglary as a violent felony. *See, e.g.,* 🚩*United States v. Davis,* 16 F.3d 212 (7th Cir.1994) (holding that attempted burglary under Illinois law is a violent felony under 🚩§ 924(e)(2)(B)(ii)), *petition for cert. filed,* 62 U.S.L.W. 3775 (U.S. May 11, 1994) (No. 93–9130); 🚩*United States v. Thomas,* 2 F.3d 79, 90 (4th Cir.1993) (same under New Jersey law), *cert. denied,* 114 S.Ct. 1194 (1994).

Based on the reasoning expressed in *Lane,* even if we were to assume that the burglary of an attached parking garage does not meet 🚩section 4B1.1's definition of "burglary of a dwelling," we believe Ewing's offense posed a great enough risk of physical injury to another to make it a crime of violence. The garage that Ewing broke into was attached to a large apartment building. Many people lived in that building and it was very likely that a resident, if not several, could be in the garage at any given time. As the district court observed, "[t]he likelihood that a resident would walk by while [Ewing] was in the course of committing the burglary was great." (App. 104–05.) If, as a panel of this court has previously found, the attempted breaking and entering of a business place is a crime of violence under the "otherwise" clause, then surely the burglary of an underground parking garage attached to a residential building also is one. *See* 🚩*United States v. Fish,* 928 F.2d 185 (6th Cir.), *cert. denied,* 112 S.Ct. 115 (1991).

Ewing's prior conviction also can be distinguished from offenses that were not classified as crimes of violence because they did not pose a risk of injury to others. In 🚩*United States v. Jackson,* 22 F.3d 583 (5th Cir.1994), the court analyzed the defendant's prior conviction for burglary under 🚩section 4B1.2(1). The court looked to the presentence report and found that, while the defendant had not been convicted of burglary of a dwelling, he had been convicted of burglary of a building with intent to commit theft. More specifically, the court observed that the defendant had been caught in the backyard of a house that had been vacant for seven years in an attempt to take some parts from an air conditioning unit. The court, in rejecting the government's contention that "neighbors, passersby, or the owners were at risk," found that the presentence report "provides absolutely no facts upon which to base a conclusion that a serious potential risk of physical injury was posed to anyone." 🚩*Jackson,* 22 F.3d at 585.

**\*6**  Similarly, in *United States v. Smith,* 10 F.3d 724, 730 (10th Cir.1993), the Tenth Circuit was asked to decide whether the defendant's 1989 second-degree burglary conviction in California was a crime of violence. The court summarized the details of the crime in question as follows:

> Defendant removed a window screen and entered an office in a commercial building through an unlocked window. Using a screwdriver, he pried the lock off a file cabinet drawer, removed a cash box from the drawer, and exited the office. There is no indication that he was armed. The office was unoccupied and its door was locked at the time of the burglary. No confrontation with any person occurred. A police report, apparently attached to the criminal complaint, set forth the facts described above. The report also explained that the commercial building Defendant entered housed the Rouge Center, a drug rehabilitation center providing outpatient and inpatient services, and that it was the office of the

Center's operations manager which was burglarized.

(Citation omitted.) In holding that this offense was not a crime of violence, the court observed that the office was locked "and, therefore, obviously not part of a common living area into which residents could enter at any time." *Id.* at 734.

*Jackson* and *Smith* both stand for the proposition that, when an offense involves a low risk of confrontation between the assailant and others, courts should be reluctant to classify such a crime as violent under ⚑ section 4B1.1.  *See also* ⚑ *United States v. Talbott,* 902 F.2d 1129, 1133 (4th Cir.1990) (holding that two prior convictions for burglary of commercial structures did not come within the ambit of a "crime of violence"). Here, however, there was a very high risk of confrontation and, because Ewing was in possession of a knife, the potential for injury to another was even greater. Accordingly, we find the district court did not err in holding that Ewing's 1987 state conviction for burglary was a crime of violence for purposes of ⚑ section 4B1.2.[5]

AFFIRMED.

**All Citations**

38 F.3d 1217 (Table), 1994 WL 577055

## Footnotes

\*   Honorable Jon P. McCalla, United States District Court for the Western District of Tennessee, sitting by designation.

1   In order to establish that he had been prejudiced, Ewing submitted his own affidavit. Ewing claims that his "prolonged" incarceration affected his ability to support his children, maintain employment, and prevented him from locating a material witness who would have provided exculpatory testimony. Given that his indictment was delayed by only five days, we do not believe these allegations alone are serious enough for us to disturb the district court's consideration of this factor.

2   The Guidelines Manual in effect on the date that the defendant is sentenced applies. ⚑ U.S.S.G. § 1B1.11(a) (Nov. 1993). Ewing was sentenced on December 23, 1993. Thus, references to the guidelines are to the November 1993 Guidelines Manual.

3      The Supreme Court has recently held that generally the Sentencing Commission's commentary is to be given

" 'controlling weight unless it is plainly erroneous or inconsistent with the [guideline,]' " and that the 🚩section

4B1.2 commentary is a "binding interpretation of the phrase 'crime of violence.' " 🚩*Stinson v. United States,*

113 S.Ct. 1913, 1919–20 (1993).

4      Given the substantial similarity between the definitions for "violent felony" and "crime of violence" set forth in

🚩§ 924(e)(2)(B) and guidelines 🚩section 4B1.2(1), respectively, courts interpreting one phrase have found

persuasive authority interpreting the other. *See, e.g.,* 🚩*United States v. De Jesus,* 984 F.2d 21, 24 n. 6 (1st

Cir.1993); 🚩*United States v. Preston,* 910 F.2d 81, 86 n. 6 (3d Cir.1990), *cert. denied,* 498 U.S. 1103 (1991).

5      Because of the way we reach our holding, we need not consider the government's contention that the burglary

of a parking structure connected to a dwelling qualifies as the burglary of a dwelling.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.