UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                            PLAINTIFF

v.                                                              CRIMINAL ACTION NO. 3:23-CR-00014-DJH

BRYAN DOUGLAS CONLEY                                                                DEFENDANT

### NOTICE OF INTENT TO INTRODUCE FLIGHT EVIDENCE AND MOTION TO ADMIT FLIGHT AS SUBSTANTIAL EVIDENCE OF GUILT IN A CRIMINAL CASE UNDER RULES 402, 403, and 404(b).

This Court should admit at trial evidence showing that Bryan Conley fled before a scheduled court date as substantive evidence of guilt. That evidence is admissible under Fed. R. Evid. 402 or 404(b) and 403 to show he knows he is guilty of the crimes the grand jury charged him with committing.

INTRODUCTION

A grand jury indicted Conley on February 7, 2023 in the Western District of Kentucky. DN 4. Counts 1 and 2 charges the defendant violation of 18 U.S.C. Section 2421(a) (Mann Act) and 18 U.S.C. 2423 (Interstate Transportation of a Minor) in which the defendant transported a minor victim between November 8 to November 12, 2018 interstate with the intent the minor victim engage in prostitution and production of visual images of the minor engaging sexual activity. Count 3 charges Kidnapping by Inveigle and Decoy (18 U.S.C. Section 1201(a)(1) of a second victim in late January 2019. Conley was also charged with Bank Fraud (18 U.S.C. 1344), Aggravated Identity Theft (18 U.S.C. 1028A), and ten counts of Interstate Threats (18 U.S.C. 875(c) relating to text message threats sent to the second victim's elderly parents with ransom demands, all of which occurred during the course of the kidnapping.

During the prior prosecution in U.S. v. Conley, 3:19-cr-00019-DJH, a superseding indictment was not sealed and the defendant was to appear while on bond and electronic monitoring in Louisville, Kentucky to meet with his attorney. The United States learned in court at defendant Conley's

arraignment that he had told his counsel that his family had been in an accident and had to be air lifted to the hospital and he did not appear at his arraignment.  The United States contacted the FBI and United States probation to learn that Conley's electronic monitoring device was located around Smith's Grove, Kentucky, near Bowling Green.  FBI recovered a cut ankle monitor around Smiths Grove and a manhunt for Conley immediately began.  Authorities later caught Conley in Ada, Ohio. The admission of that evidence that Conley purposefully cut his monitoring device while on home detention and fled from law enforcement to Ada, Ohio, will further illustrate Conley's guilt given he fled Kentucky to avoid his on-going legal troubles.  On February 1, 2019, Conley was released on supervised bond with conditions that his travel be restricted to Texas and Kentucky.  He was placed on home dentition and GPS monitoring as a condition of his release.  On June 14, 2019, the grand jury issued a superseding indictment adding Kidnapping, Bank Fraud and Aggravated identity theft to Conley previous charges.         On June 6, 2019, the summons scheduling arraignment on the superseding indictment for June 20, 2019, was returned executed. On June 19, 2019, Conley filed a motion to waive his personal appearance at arraignment (the motion included Conley's signature acknowledging that Conley received a copy of the Superseding Indictment).  DN 26 and DN 26-1 (3:19-cr-00019-DJH).

       According to the violation conduct filed by the United States Probation office, on June 20, 2018, Conley was to appear in U.S. District Court for the Western District of Kentucky for his arraignment on the superseding indictment.  Conley received permission by his supervising officer in Texas to travel to Kentucky for court purposes and left a via personal vehicle for Louisville on June 14, 2019.  On June 20, 2019, Conley did not appear as required in U.S. District court for Arraignment purposes as he notified his attorney that his wife and child had been involved in a bad car accident and needed to return to Texas immediately to join them at the hospital.  USPO noted that Conley's appearance at court was waived on June 19, 2019, after his defense counsel filed a Motion for Waiver because of the alleged emergency.  On June 21, this office received notification from his supervising officer in Texas that they had received a Tracker Strap Tamper alert notification from his GPS monitor at 11:25 a.m. that mooring.  They then attempted to communicate with Mr. Conley; however, their efforts were unsuccessful.  They then

telephonically contacted Mr. Conley's wife who indicated that Mr. Conley was in Kentucky at the VA Hospital attending court-ordered counseling.  She did not provide any information to the officers about being involved in a car accident during their conversation.  Conley was arrested in Ohio and did not have permission to be there. The FBI quickly determined that The FBI interviewed Conley's wife and other family members were not in an accident.   It is undisputed that Conley's whereabouts were unknown, and he had just been indicted for Kidnapping.

      The probation officer supervising Conley sent a GPS location of the ankle monitor to the FBI in Bowling Green.  The FBI recovered the Ankle monitor on the western shoulder of I-65 Northbound in the grass between the should and the woods.  The battery was located in the same vicinity.  Photographs of the damaged monitor and batter are attached as Exhibit 1 (Photograph of ankle strap for GPS Monitor) and Exhibit 2 (Photograph of Battery to GPS monitor).

      Conley was arrested on June 22, 2019 at around 8:05 p.m. in Ada, Ohio by the Ada Police Department.  Conley was apparently knocking on doors asking for money.  Conley did not have permission to be Ohio.  FBI took custody of Conley and transported him to the federal courthouse for his removal hearing.  Conley was not asked any questions but stated that someone else had removed his ankle monitor.  He told the FBI SA Komar on June 24, 2019, that "someone held a gun to his head and made him do the things he did".

      The evidence that Conley's ankle monitor was removed, and he traveled to state where he was not authorized to be after he was indicted for Kidnapping is uncontroverted evidence of flight.  The removal of the monitor is evidence Conley was concealing his location so he could flee.  In addition, there is evidence Conley knew he was to appear in federal Court in Kentucky as ordered by Probation.  He lied to his attorney and fled.  Conley's arguments are simply challenges to the weight of the evidence.  He can cross-examine witnesses and present evidence in his favor.  None of his arguments affect the sufficiency of the evidence of flight to support it admission in this case.

      The ongoing investigation of Conley later yielded another victim of his interstate travels and use of the internet to defraud unwitting victims when he was charged with a violation of 18 U.S.C. 2421(a)

for transporting a female who he picked up in Ohio through Kentucky to Tennessee and elsewhere for the purpose of prostitution. Conley used a fictitious online persona to entice the female into meeting with Conley and ultimately transported her across state lines to engage in sexual activity for money. Conley ultimately abandoned the young female at a truck stop in Texas.

## MEMORANDUM OF LAW

**I. BECAUSE CONLEY FLED FROM BOND AND HOME DETENTION, AND BECAUSE THIS FLIGHT HAS PROBATIVE VALUE, THE DISTRICT COURT SHOULD ADMIT HIS FLIGHT AS EVIDENCE OF HIS GUILT.**

The Sixth Circuit recognizes defendants' flight, concealment of evidence and implausible stories as evidence which allows an inference of guilty knowledge. *See United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995). Flight has been deemed relevant to show guilt through consciousness of guilt. *United States v. Touchstone*, 726 F.2d 1116, 1119 (6th Cir. 1984); *United States v. Rowan*, 518 F.2d 685, 691 (6th Cir. 1975). The relevance of such evidence depends on a series of inferences. Flight evidence is probative if the district court is confident that inferences can be drawn: 1) "from the defendant's behavior to flight"; 2) "from flight to consciousness of guilt"; 3) "from consciousness of guilt to consciousness of guilt concerning the crime charged"; and (4) "from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Dillon*, 870 F.2d 1125 (6th Cir. 1989) (holding that the defendant's departure from the city after hearing that a co-conspirator was about to implicate him in grand jury testimony was properly admitted as evidence of guilt). Flight may be proven "where it occurs after any event which would tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind." Id. at 1128. In *United States v. Carter*, 236 F.3d 777 (6th Cir. 2001), the trial court gave an instruction on flight substantially similar to Pattern Instruction 7.14. The Sixth Circuit concluded that giving the instruction was not an abuse of discretion and did not unconstitutionally require the defendant to testify or explain prior incidents of flight. The instruction did not appear to suggest guilt on the defendant's part, but rather stated that "evidence of flight may or may not indicate a defendant's guilty conscience or intent to avoid punishment." *Id.* at 792 n.11 (italics in

original), citing *Illinois v. Wardlow*, 528 U.S. 119, 123-27 (2000). *See also United States v. Swain*, 2007 U.S. App. LEXIS 16825 at 7-9, 2007 WL 2031447 (6th Cir. 2007) (unpublished) (giving instruction 7.14 on flight was not error because adequate evidence existed; Instruction 7.14 accurately reflects the law, citing *United States v. Carter*, *supra* and *United States v. Diakite*, 5 Fed. Appx. 365, 370-71 (6th Cir. 2001) (unpublished)).

Because Conley fled and disposed of his ankle monitor prior to his arraignment on additional charges, Conley's flight has probative value as evidence of guilt and the inference that he fled to avoid prosecution can reasonably be drawn. Moreover, Conley had to be located and arrested while the case was pending because he removed his monitoring device. The Court can confidently draw the inference that Conley fled because his pending charges.

The Sixth Circuit has held that evidence of flight is admissible even though the flight was not immediately after the commission of the crime or after the defendant is accused of the crime. *Touchstone*, supra at 1119-20. In that case the court explicitly approved the following instruction: The intentional flight or concealment of a defendant is not of course sufficient in itself to establish his guilt; but is a fact which, if proved, may be considered by the jury in the light of all other evidence in the case, in determining guilt or innocence. *Id.* at 1118 and 1120 n.6.

In *Illinois v. Wardlow*, *supra*, the Supreme Court recognized flight as a factor the police could use in determining whether they had reasonable suspicion to justify a stop under the Fourth Amendment. The Court stated, "Headlong flight wherever it occurs is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, *supra* at 124. Although flight immediately after being charged with a crime is sufficient to prove guilt of that crime, it is not necessary. Flight may be proven "where it occurs after any event which would tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind." *Touchstone, supra* at 1128. An unsolicited phone call from an FBI agent telling Clark that he was executing a search warrant and requesting that Clark return home would "spark a sharp impulse of fear . . . in a guilty mind." The FBI later discovered

over 600 images of child pornography on his computer. The Court can confidently draw the inference from Clark's guilty conscious to guilt of his crime.

### I. Flight Evidence is Considered Relevant Evidence Under Rule 402

The Sixth Circuit has consistently held that, under Rule 402 and not excluded under 403, flight is admissible as evidence of guilt by conduct and that juries have the power to determine how much weight and value should be given to the flight evidence. United States v. Dillon, 870 F.2d 1125, 1126 (6th Cir. 1989) (citing United States v. Touchstone, 726 F.2d 1116, 1119 (6th Cir. 1984)). Given the Sixth Circuit hasn't excluded flight evidence under 403, it can be implied that the evidence is considered relevant and admissible under 402.

### II. Conley's Flight is Admissible Under Rule 404(b).

In a recent unpublished opinion, the Sixth Circuit held flight evidence as admissible under Rule 404(b) as "other acts." When conducting this analysis for flight evidence, the district court's task is to determine the flight occurred, the flight is offered for a legitimate purpose and not for character, and that the probative value outweighs the unfair prejudicial affect. United States v. Perez-Martinez, 746 F. App'x 468 at 474-75 (citing United States v. Murphy, 241 F.3d 447, 450 (6th Cir. 2001).

The United States contends the flight evidence meets all three factors to be considered admissible under a 404(b) analysis.

#### 1. There Is Sufficient Evidence the Other Act Occurred.

Under the first step, the court assesses whether the "other acts" occurred. Here, there is sufficient evidence to show that the flight in question occurred. Conley physically removed his electronic ankle bracelet, missed his scheduled court date, and was apprehended in Ohio while he was supposed to be on home detention. See United States v. Perez-Martinez, 746 F. App'x 468 (6th Cir. 2018) (Evidence of defendant missing parole reports, not returning parole officer's calls, and not being able to be located until he was detained re-entering the United States from Canada served as sufficient evidence of the flight taking place).

#### 2. The Evidence is Being Offered for a Permissible Purpose.

The Sixth Circuit weighs this factor as the four-step analysis described below in the 403 analysis. As discussed below, the United States holds firm that all four factors of the probative value measurement test in <u>Myers</u> are met in the <u>Conley</u> case. The flight evidence is not offered to show the character of the defendant but is used to show the guilt by conduct.

       3.   <u>The Probative Value of the Evidence Outweighs the Danger of Unfair Prejudice.</u>

Finally, the third determination a court must make before admitting other-act evidence under Rule 404(b) is whether its probative value is substantially outweighed by the danger of unfair prejudice. <u>Id.</u> at 477. (Evidence of defendant's flight was not unfairly prejudicial where the government only introduced evidence of the defendant's probation violation to demonstrate his flight). Like the <u>Perez-Martinez</u> case, the evidence is simply being offered to help establish the flight and the guilt associated with that flight.

Here, all three factors fall in favor of the government. The evidence reasonably establishes the flight occurred, the evidence is being offered for a permissible purpose, and the probative value outweighs the unfair prejudicial effects.

III.   <u>The Evidence Sought to Be Introduced is Admissible Given its Probative Value to the Case; Rule 403 Does Not Exclude It.</u>

As previously stated, the Sixth Circuit has held that flight is admissible as evidence of guilt by conduct and that juries have the power to determine how much weight and value should be given to the flight evidence. <u>United States v. Dillon</u>, 870 F.2d 1125, 1126 (6th Cir. 1989) (citing <u>United States v. Touchstone</u>, 726 F.2d 1116, 1119 (6th Cir. 1984)). The task of the district court is to determine whether the evidence's probative value is outweighed by the danger of unfair prejudice. If the district court finds that the evidence is not so unfairly prejudicial, the flight evidence may be admitted as evidence of guilt. <u>Id.</u> When determining how to balance the probative and prejudicial value of the flight evidence, the Sixth Circuit has adopted the four-step analysis developed by the Fifth Circuit in <u>United States v. Myers</u>. The Fifth Circuit said:

> The four-step analysis depends on the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

Dillon, 870 at 1126 (citing United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977)). When considering the four-step analysis, all four inferences must be "reasonably supported" by the flight evidence. Myers, 550 F.2d at 1050.

Conley's flight meets all four of those steps to allow the flight evidence to be admitted to further prove Conley's guilt.

    A.    The Evidence "Reasonably Supports" that all four-steps are satisfied.

The first step in establishing sufficient probative value of flight evidence is the inference that can be drawn from the defendant's behavior to flight, meaning whether there was an actual, not a speculative flight, in the first place. Dillon, 870 F.2d at 1128 (factor one was satisfied where defendant, after hearing about co-defendant's grand jury testimony, broke a family obligation and was later arrested in Florida under an assumed name); see also Touchstone, 726 F.2d at 1119-20 (flight evidence was admissible where the defendant disappeared on the third day of trial).

The second and third step go to two interrelated factors: immediacy and the defendant's knowledge that the defendant is in trouble with the law. Id. Those two factors require that the timing of the flight must induce the sudden onset or the sudden increase of fear in the defendant's mind that the defendant will face apprehension, accusation of, or conviction of the crimes charged. Id. It is not required that the defendant take flight immediately following the committed crime; flight can be induced much later than when the crime was committed. Id. (defendant fled almost two years after the crime and after becoming aware of his co-defendant's plan to testify against him); see also United States v. Oliver, 397 F.3d 369, 376 (6th Cir. 2005) (inferences could be drawn given the defendant fled knowing he had been indicted for the charges against him).

For the fourth and final factor, from guilty consciousness to actual guilt being related to the crimes in the case, the Sixth Circuit has held numerous facts to be "reasonably supporting" evidence. United States v. Oliver, 397 F.3d 369, 376 (6th Cir. 2005) (evidence of the defendant's statements, prior police investigations, and evidence seized during home search were sufficient to support a guilty consciousness to

actual guilt); see also United States v. Perez-Martinez, 746 F. App'x 468, 476 (6th Cir. 2018) (evidence was sufficient where defendant pointed to no other charges he was facing nor identified any other possible motivation to flee other than the charges-at-hand).

Here, Conley's flight and the facts that surround it satisfy all four inferences. Conley was on home monitoring and removed his bracelet when he fled to Ohio from his upcoming court date in Kentucky. Although Conley didn't immediately flee following his crimes, the facts surrounding his flight meet the sudden-increase-in-fear standard. Conley had an upcoming court date surrounding additional charges related to the Superseding Indictment; he knew of those charges and that his presence in court was required. Due to the sudden onset of fear of legal consequences, Conley removed his bracelet and fled the state of Kentucky. Conley's flight meets the fourth inference is clearly met given that Conley has no other charges or motivations to point to as to why he fled prior to his upcoming court date. The evidence meets the "reasonably supported" threshold laid out in Myers.

IV.  Proposed Jury Instruction

**7.14 Evidence of Flight**

(1) You have heard testimony that after the crime was supposed to have been committed, the defendant fled or attempted to flee from prosecution.

(2) If you believe that the defendant fled or attempted to flee from prosecution, then you may consider this conduct, along with all the other evidence, in deciding whether the government has proved beyond a reasonable doubt that he committed the crime charged. This conduct may indicate that he thought he was guilty and was trying to avoid punishment. On the other hand, sometimes an innocent person may act for some other reason. The defendant has no obligation to prove that he had an innocent reason for his conduct.

**Authority:**  Pattern Crim. Jury Instr. 6th Cir. 7.14 (2022)

CONCLUSION

Defense counsel and the Court should take notice of the United States' intent to seek the introduction of this evidence. Further, for the above-stated reasons, the government respectfully requests that the above-described evidence be admissible under Rules 402, 403, and 404(b).

This court should grant the United States's Motion in Limine.

Respectfully submitted,

MICHAEL A. BENNETT
UNITED STATES ATTORNEY

*s/ Joshua Judd*
Joshua Judd
Assistant U.S. Attorney
717 West Broadway
Louisville, KY 40202
(502) 582-5911

CERTIFICATE OF SERVICE

I certify that this pleading was electronically filed using the Court's ECF system on March 23, 2023, with notice to counsel for defendant.

*s/ Joshua Judd*
Joshua Judd
Assistant U.S. Attorney