UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF


v.                                    CRIMINAL ACTION NO. 3:23-CR-00014-DJH


BRYAN DOUGLAS CONLEY                                    DEFENDANT

## UNITED STATES PRETRIAL MEMORANDUM
## ELECTRONICALLY FILED

    The United States submits this pretrial memorandum for the trial currently scheduled in

Louisville for April 17, 2023.


### A. STATUTES INVOLVED AND ELEMENTS OF OFFNESES.

### Interstate Transportation for Prostitution (18 U.S.C. 2421(a)) (Count 1)

1. The Defendant knowingly transported, or attempted to do so, any individual in interstate or foreign commerce in any Territory or Possession of the United States; and
2. The purpose of the travel was for the individual to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense.


### Transportation of Minors (18 U.S.C. § 2423(a)) (Count 2)

1. The Defendant knowingly transported Minor female 1 in interstate commerce
2. At the time of the transportation, Minor Female 1 was less than 18 years old
3. At the time of the transportation, Defendant intended that Minor Female 1 would engage in prostitution or other unlawful sexual activity.


### Kidnapping by decoy and inveigle (18 U.S.C. § 1201(a)(1)) (Count 3)

1. The defendant seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away;
2. The defendant held R.W. for ransom, reward, or for any other reason;
3. In committing or in furtherance of the commission of the offense:
    a. R.W. was transported in interstate or foreign commerce,

      b. The defendant traveled in interstate or foreign commerce,

      c. The defendant used the mail; or

      d. The defendant used a means, facility, or instrumentality of interstate or foreign commerce; and

4. The defendant acted unlawfully, knowingly, and willfully.

### Bank Fraud (18 U.S.C. § 1344) (Count 4)

1. That the defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution or knowingly executed a scheme to obtain the money, funds or other property owned by or under the control of a financial institution, by means of materially false or fraudulent pretenses, representations or promises as detailed in Count 3 of the indictment;

2. That the defendant did so with the intent to defraud a financial institution; and

3. That the financial institution was insured by the Federal Deposit Insurance Corporation or National Credit Union Administration (NCUA).

### Aggravated Identity Theft (18 U.S.C. § 1028A) (Count 6)

1. Knowingly transferred, possessed, or used
2. Without lawful authority
3. Means of identification of another person
4. During and in relation to a violation of Bank Fraud in Count 3.

### Interstate Ransom Threat (18 U.S.C. § 875(c) ) (Count 6-15)

1. The Defendant knowingly sent a message in interstate or foreign commerce; and
2. Containing a true threat to kidnap any person or to injure the person of another.

## B. STATEMENT OF UNDISPUTED AND DISPUTED FACTS

Beginning in November 2018, the Defendant, Bryan Douglas Conley, used aliases and an online dating application, PlentyOfFish (POF), to lure and mislead victims to travel with him across state lines for the purpose of engaging in illegal sexual activity with a minor, A.Y., for the purpose of engaging in sexual activity with R.W. and for the purpose of ransoming the parents of an adult victim, R.W. In addition, Conley stole personal property from both R.W. an A.Y. Conley used the online profiles of "Bryant" and "Lance" to lure and entice the victims into

traveling with Conley in his car.  He offered to pay the minor victim money for sexual activity with himself and others and abandoned her at a gas station in Texas, stealing her purse and phone.  In January 2019, Conley used an online profiled to inveigle and decoy an adult victim.

Conley made false and misleading statements to her including that he was a modeling agent and ultimately that he was law enforcement.  He kept the victim in his car and ultimately began issue ransom demands to her parents.  FBI dropped a ransom in a bag and the defendant was witnessed picking it up.  He was also arrested a short time later with the ransom and the victim's phone in his possession.  The victim was safely rescued by the FBI in the back of the defendant's car.

## MANN ACT/TRANSPORTATION OF MINOR

This charge involved a minor victim, A.Y., who was 17 at the time she met Conley on PlentyOfFish in November 2018.  Conly used a false identity named "Bryant" to communicate with A.Y. to convince her to come to Memphis and have sex for money.

A.Y. wanted to get away from home and set up her profile on PlentyOfFish looking for a "sugar daddy."  On November 8, 2018, she received communications from a light-skinned black man supposedly from the username "loveiseasy" from Memphis named "Bryant De Beers".  Bryant wanted A.Y. to come to Memphis to have sex with him and he would pay her for it. The two texted and made travel plans.  On November 10, 2018, Bryan Conley claimed at the behest of Bryant, he picked up A.Y. in a public park in Ada, Ohio, in a grey Ford Taurus.  They drove to LaGrange, Kentucky.  During the drive, Conley tells her that Bryant will pay even more money if she has sex with Conley.  Conley stays at the Super 8 motel in LaGrange (room 210). Conley and A.Y. have sex. Conley and A.Y. traveled toward Bowling Green, Kentucky, and then returned to the Super 8 motel in Oldham County.   While on the way to Bowling Green, Conley

instructed A.Y. to use PlentyOfFish to find someone who will have sex with her while Conley records it with his phone. Conley offered her payment to perform the act. They again returned to the Super 8 motel and have sex again and ordered pizza.

The next day, November 11, 2018, Conley and A.Y. traveled to Jackson, Tennessee. Conley had A.Y. find someone on PlentyOfFish to have sex with; A.Y. found R.B. A.Y. and Conley arrived at R.B.'s apartment. Conley stood in the bedroom room and provided instruction to R.B. while he and A.Y. had sex. During this time, Conley held his cell phone as if he was videotaping. Conley and A.Y. left and traveled to Hot Springs, Arkansas. They both slept in Conley's car. On Monday, November 12, 2018, Conley and A.Y. traveled to Lake Catherine, Texas and again had sex in the car. A.Y. told Conley she wanted to go home. She refused to have sex with Conley and was upset. Conley masturbated. Shortly thereafter, Conley arrived at a gas station and A.Y. got out of the car. Conley drove away leaving A.Y. at the gas station in Wills Point, Texas. Conley stole her purse and cell phone.

On November 14, 2018, SA Jimmy Burkett, Texas Department of Public Safety, interviewed A.Y. SA Burkett confirmed that Conley rented a room at the Super 8 Motel in LaGrange, KY, under his real name and his phone number ending 7423.

**Kidnapping, Bank Fraud, Agg ID theft, and Threats:**

Conley inveigled and decoyed the victim, R.W., by false representations, promises, and other deceitful means. He engaged in sexual activity under false pretenses, stole her credit card and used it at Walmart without her permission, he attempted to access her bank account with his phone ending 7423, and sent ransom demands to her parents, in a four-day period of time.

Conley lured R.W. to come meet him, under the false pretense that she was going to meet someone named "Lance", a male model, for a romantic relationship. R.W. went to meet

"Lance" but instead was introduce to Conley.  Throughout her interactions with Conley, Conley used text application to pose as "Lance" to mislead and manipulate R.W. for sex, money, and purposes of kidnapping R.W.  As R.W. and Conley continued interacting, Conley made false representations that he was going to help R.W. become a model.  Later while Conley had R.W. in his control, Conley also falsely told R.W. he was an undercover police officer and that she was the target of human trafficking ring.  He elaborated that it was not safe for her to return home or work.

In 2019, R.W. was an adult female who lived at home with her parents who have custody of her two children.  R.W. worked at a nursing home.  All her life, R.W. has suffered from depression and anxiety and is treated with medication.  R.W. participated in special education in her youth and was diagnosed as severely emotionally disturbed.  R.W. separated from a relationship in December 2018.  She was not able to independently care for herself and her children and has an IQ in the 80s.

Conley used the profiles "loveiseasy", "bhtown", and the name "Lance" to communicate with R.W. on January 27 and 28 on text applications.  R.W. traveled to meet "Lance" around Dover, Tennessee.  When she arrived, she met Bryan Conley who told her "Lance" could not make it.  Conley said he was Lance's modeling agent.  Conley told R.W. she could be a model and set up another time for them to meet.

On another occasion, Conley told R.W. that she could be a paid model and met with her on another day in Brentwood to prepare her photo portfolio to use for modeling jobs.  Conley gave her a drink containing a funny tasting substance from Conley's Yeti coffee mug.  She said Conley took clothed, nude, and sexual photos of her as part of her "portfolio".  She went home that night. Throughout her interview, R.W. said she was really interested in meeting Lance

mode) but never did.  Conley stole R.W. purse during this encounter and attempted to use her credit card and access her bank accounts.

R.W. again traveled to meet "Lance" but again met Conley near Ft. Campbell.  R.W. stayed late to meet "Lance".  Conley told her that "Lance" had been arrested and would not show up.  R.W. returned home in the early morning hours of the next day.

Conley had served as a soldier in the 101st Airborne in Ft. Campbell.  He had lived in the area and would have been familiar with the areas surrounding the base in Kentucky and Tennessee.

On January 29, 2019, Conley told R.W. via text about a photo shoot in Louisville with Lance.  The photo shoot would involve some clothed photos with her tied up (bondage).  She drove toward Louisville and ran out of gas because she said Conley told her Lance had her wallet.  She met Conley at the Shepherdsville Kroger.  R.W. said Conley took her phone.  R.W. also stated she drank a substance in a Yeti container that tasted funny.  Conley told her it was Gatorade (or a sports drink) and she needed to drink it as part of her modeling contract for advertising money that would be paid to both of them.  She said it made her sleep and she fell in and out of sleep.  She said she was bound at her legs, feet, and gaged with rope by Conley.  Conley told her it was part of the photo shoot.  She said she was bound for maybe 3 or 4 hours.  She said Conley removed a gold necklace from her neck.   She said she intended to go home the evening of January 29, 2019, after the photo shoot.  Conley changed his story telling her that Lance and he were undercover police officers and that she was the target of human trafficking, and it was not safe for her to go home.  She was told by Conley that he was retrieving her wallet when he picked up a brown paper bag near a dumpster in the Tri-State International Trucks, Inc. parking lot at 200 J W Dickson Drive, Oak Grove, KY.  He returned her wallet, but cards and

other items were missing.  The bag Conley retrieved was a McDonald's food bag containing money and jewelry for the ransom payment to R.W.'s parents.

From the perspective of the FBI the case began on January 29, 2019, at approximately 1:45 PM CST when the Brentwood Police Department (BPD), located in Brentwood, Tennessee, received a call from R.W.'s mother, who reported her daughter had been kidnapped.   R.W.'s mother's telephone number ending 4651 began receiving violent text messages from R.W.'s cellular telephone ending 5512 demanding a ransom be paid for R.W.

Bryan Conley used R.W.'s cellular telephone to communicate that he kidnapped R.W. and directed R.W.'s mother to pay a ransom of $20,000 to ensure R.W.'s safe release.  Conley instructed R.W.'s family to start driving towards Toledo, OH, where she would receive additional instruction.

The FBI quickly became involved with R.W.'s family and FBI negotiators assisted R.W.'s family.  FBI computer scientists were able to extract detail of text messages from R.W.'s parents' phones.  The following are examples of violent SMS messages from R.W.'s phone ending 5512 to R.W.'s mother's phone ending 4651:

> R.W.   5512:   You have ten minutes to be on road or I sell her ass
> 5512:   One more lie she's dead
> 5512:   In 1 hour they will start raping her ass
> 5512:   You listen or I send you pic of her body

Conley told R.W.'s family that R.W. was being held at a residence in Toledo, Ohio, but later changed the location to Cincinnati, OH.   Conley refused to allow R.W.'s mother to talk, but he sent a proof of life photograph at approximately 10:00 PM CST. The proof of life photograph depicted R.W. inside of an unknown vehicle with what appeared to be binding material around her mouth partially covered with a multi-colored blanket.

Conley and R.W.'s family agreed to a ransom of $400 and jewelry.   The FBI

documented the serial numbers for the ransom money and photographed the jewelry. R.W.'s father was instructed to start travelling towards Toledo, OH to drop off the newly negotiated ransom.

At approximately 8:54 AM, on January 29, 2019, someone attempted to log in to R.W.'s USAA bank account. The individual provided R.W.'s correct social security number but failed to correctly answer any of the security questions. At 11:31 AM there was a successful login to RW.'s USAA bank account using her telephone number.

The telephone number associated with the first attempted login was telephone number ending 7423. An exigent request to Sprint Corporation revealed, 7423 was registered to Bryan Conley's wife. Conley's wife also had a gray 2014 Ford Taurus registered to her at a residence occupied by Bryan Conley in Tennessee. At the time of arrest, the FBI recovered a phone with telephone number ending 7423 in Conley's car.

On January 29, 2019, at approximately 12:02 AM, a witness at Walmart in Oak Grove, KY, advised that a white male attempted to use R.W.'s credit card. After having the credit card denied, the unidentified white male left in a grey Ford Taurus. A review of surveillance video by law enforcement confirmed that a white male left in a grey Ford Taurus.

During the initial communications between Conley and R.W.' s family, Conley offered as proof he had R.W. by providing an address where her Toyota Prius was left. Conley told R.W's family the R.W.'s Toyota Prius was parked at 185 Adam Shephard Parkway, Shepherdsville, KY. On January 30, 2019, the FBI located R.W.'s Toyota Prius was located at Kroger, located at 185 Adam Shephard Parkway, Shepherdsville, KY.

Emergency phone location orders were obtained for R.W.'s and the phone used by Bryan Conley. The phone information showed that Bryan Conley and R.W.'s telephones were in close

proximity throughout the duration of the pings and appeared to be traveling together.

At approximately 2:25 PM CST on January 30, 2019, while FBI Special Agents were with the father of R.W., in the state of Tennessee, the father received a text from R.W.'s phone with the following text, "One more lie she's dead". Location information provided by the cellular carrier, Verizon Wireless, placed R.W.'s phone at the following coordinates in the state of Kentucky at 2:25 PM CST on January 30, 2019: 36.96229889 LAT/-87.454605 LONG. These coordinates plot in vicinity of Hopkinsville, Kentucky.

On January 30, 2019, at approximately 3:30 PM CST, the FBI dropped a ransom payment in a McDonald's food bag and left it outside to the Tri-State International Trucks, Inc., located at 200 J W Dickson Drive, Oak Grove, KY 42262. The location of the drop was sent via text to R.W.'s phone.

On January 30, 2019, at approximately 5:00 PM CST, FBI Louisville Division observed Conley retrieve the ransom payment from behind a dumpster at the Tri-State International Trucks, Inc. in Oak Grove, KY. Conley then got into a Ford Taurus and left Tri-State International Trucks, Inc.

FBI Louisville Division followed Conley in the 2014 Ford Taurus to a Marathon Gas Station located at 802 South Main Street, Leitchfield, KY 42754. FBI arrested Conley at the Marathon Gas Station. At the time of Conley's arrest, FBI Special Agents removed R.W.'s phone from Conley's person. R.W. was also in the back seat of the Ford Taurus.

Verizon Short Message Service (SMS) detail records revealed all SMS sent from R.W.'s telephone number ending 5512 on January 29, 2019, through January 30, 2019, at 3:08 AM CST were traversed through Verizon switches located in or around Alpharetta, Georgia and Duluth, Georgia. Therefore, the ransom communications traveled in interstate commerce. The SMS

messages also traveled between two iPhones causing the transmission to be across Apple servers in interstate commerce. Finally, the communications between the phones also traveled across state lines to recipients located in states where the sender was not located.

The FBI executed a search of the Conley's Ford Taurus. Agents recovered duct tape, rope, condoms, zip ties, a red yeti mug, and Nyquil sleeping liquid. R.W.'s purse, social security card, identification cards, and credit card were also recovered. The FBI recovered R.W.'s phone from Conley. The FBI also recovered the ransom money and documented the serial numbers were the same that were left in McDonald's bag. The jewelry provided as the ransom was also recovered from the front seat of Conley's car. The FBI executed a search of Conley's phone and recovered two child sexual abuse material videos of A.Y., evidence of six POF accounts, internet search history and images probative of the charged conduct, evidence of Conley using multiple voice of internet protocol (VOIP) phone numbers, and evidence that Conley attempted to delete evidence from his phone.

### C. A SEPARATE STATEMENT OF EACH UNRESOVLED SUBSTANTIVE ISSUE OF LAW, WITH DISCUSSION AND CITATIONS TO AUTHORITIES

None known at this time.

### D. A STATEMENT OF EVIDENTIARY ISSUES WHICH IT IS REASONABLY BELIEVED WILL BE RAISED AT TRIAL TOGETHER WITH CITATIONS TO THE FRE AND AUTHORITIES IN SUPPORT OF POSITION TAKEN

The United States filed a motion to admit flight as substantive evidence of guilt. During the pendency of the prosecution and prior to a superseding arraignment date, Conley removed a GPS monitoring device attached to his ankle by U.S. Probation. FBI initiated a fugitive manhunt and Conley was arrested a few days later in Hamilton County, Ohio.

The United States also filed a FRE 404(b) notice to admit the following evidence and testimony: (1) that the defendant communicated through his cellular device using third party applications that created additional telephone numbers, in addition to his Mobile Station International Subscriber Directory Number (MSISDN) obtained through Verizon, and posed as people other than himself, and (2) that the defendant produced and possessed child sexual abuse material ("CSAM") of victim A.Y.

**E. A STATMENTOF AN KNOWN OR REASONABLY ANTICPATED POTENTIAL TRIAL PROBLEMS, OR OTHER ISSUES WHICH MAY ASSIST THE COURT IN TRYING THE CASE.**

None known at this time.

**F. PROPOSED SUBSTANTIVE AND SPECIAL JURY INSTRUCTIONS WITH CITATIONS TO AUTHORITIES.**

**COUNT 1 (INTERSTATE TRANSPORTATION FOR PROSTITUTION) (18 U.S.C. 2421(a).**

Count 1 of the indictment charges the defendant with transportation for prostitution or sexual activity for which the defendant or any other person identified in the indictment could have been charged with a criminal offense. In order for you to find the defendant guilty of this charge, the government must prove both of the following elements beyond a reasonable doubt:

1. The defendant knowingly transported or attempted to transport, the person identified in the indictment in interstate commerce; and

2. At the time of transportation or the attempted transportation, the defendant intended that the person identified in the indictment would engage in prostitution or sexual activity for which the defendant or any other person identified in the indictment could have been charged with a criminal offense.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

**Authority:**   Fed. Crim. Jury Instr. 7th Cir. 2421 (2020 ed.)

## <u>COUNT 2 (TRANSPORTATION OF MINORS) (18 U.S.C. § 2423(a)) (Count 2)</u>

Count 2 of the indictment charges the defendant with knowingly transporting a minor with intent that the minor engages in criminal sexual activity. For you to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

1.  That the defendant knowingly transported an individual.

2.  That the individual transported was under 18 years of age.

3. That the defendant intended the individual to engage in prostitution or criminal sexual activity.

4.  That the transportation was in interstate commerce.

Now I will give you more detailed instructions on some of these terms.

"Prostitution" means knowingly engaging in or offering to engage in a sexual act in exchange for money or other valuable consideration.

"Criminal sexual activity" includes soliciting or enticing a minor to engage in sexual activity for the purpose of producing or attempting to produce visual depictions of the minor engaging in sexual activity. That the defendant employed, used, persuaded, induced, enticed, coerced a minor to engage in assist another person to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.

The term "in interstate commerce" means the defendant transported the individual across a state line.

The government is not required to prove the defendant knew that the person transported was a minor.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

**Authority:** Pattern Crim. Jury Instr. 6th Cir. 16.10 (2022)

## <u>COUNT 3 (KIDNAPPING BY INVEIGLE AND DECOY) (18 U.S.C. § 1201)</u>

It's a Federal crime for anyone to kidnap, seize, confine, inveigle, decoy, abduct, or carry away another person and then transport that person in interstate commerce.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

1. The Defendant knowingly and willfully kidnapped, seized, confined, inveigled, decoyed, abducted or carried away the victim, R.W.;

2. The Defendant kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away the victim with the intent to collect a ransom, reward, or other benefit and held the victim for that reason; and

3. The victim was willfully:

   a. transported in interstate or foreign commerce regardless of whether the person was alive when transported across a state boundary;

   b. the defendant traveled in interstate or foreign commerce; or

c. used the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

To "kidnap" a person means to forcibly and unlawfully hold, keep, detain, and confine that person against the person's will. Involuntariness or coercion related to taking and keeping the victim is an essential part of the crime.

To "inveigle" a person means to lure, or entice, or lead the person to do something by making false representations or promises or using other deceitful means. *United States v. Lentz*, 383 F.3d 191, 202 (4th Cir. 2004)

To "decoy" means enticement or luring by means of some fraud, trick or temptation. *United States v. Hoog*, 504 F.2d 45, 51 (8th Cir. 1974)

Consent is not a defense to kidnapping by inveiglement, since inveigling necessarily contemplates that the victim's apparent consent was in fact obtained by deception. *U.S. v. Boone*, 959 F.2d 1550 (1992); *Wells v. United States*, No. 3:07cv1740 (JBA), 2010 U.S. Dist. LEXIS 5332, at *31-32 (D. Conn. Jan. 22, 2010); *United States v. Stands*, 105 F.3d 1565, 1576 (8th Cir. 1997)

A car and a phone are instrumentalities of interstate or foreign commerce. *United States v. Windham*, 2022 WL 17090506 (6th Cir. 2022)

The Government doesn't have to prove that the Defendant committed the kidnapping for ransom or any kind of personal financial gain. It only has to prove that the Defendant intended to gain some benefit from the kidnapping.

The defendant need not use overt force to accomplish his purpose. He may use deceit and trickery. Inducing an individual by misrepresentation to do something can constitute interfering with and exercising control over another.

"Interstate commerce" means business or travel between one state and another.

A person is "transported in interstate commerce" if the person is moved from one state to another, in other words, if the person crosses a state line.

The Government does not have to prove that the Defendant knew he took the victim across a state line. It only has to prove the Defendant was intentionally transporting the victim.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

**Authority:** S3 Modern Federal Jury Instructions-Criminal 49 (2022)


## COUNT 4 (BANK FRAUD) (18 U.S.C. § 1344)

The defendant is charged with the crime of bank fraud. For you to find the defendant guilty of bank fraud, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

1. That the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution or knowingly executed or attempted to execute a scheme to defraud to obtain money or other property owned by or in the control of a financial institution by means of false or fraudulent pretenses, representations or promises;

2. That the scheme related to a material fact or included a material misrepresentation or concealment of a material fact;

3. That the defendant had the intent to defraud; and

4. That the financial institution was federally insured.

Now I will give you more detailed instructions on some of these terms.

A "scheme to defraud" includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.

The term "false or fraudulent pretenses, representations or promises" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth. They include actual, direct false statements as well as half-truths and the knowing concealment of material facts.

An act is "knowingly" done if done voluntarily and intentionally, and not because of mistake or some other innocent reason.

A misrepresentation or concealment is "material" if it has a natural tendency to influence or is capable of influencing the decision of a person of ordinary prudence and comprehension.

To act with "intent to defraud" means to act with an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself or to another person.

It is not necessary that the government prove all of the details alleged concerning the precise nature and purpose of the scheme or that the alleged scheme actually succeeded in defrauding anyone or that someone relied on the misrepresentation or false statement or that the

defendant benefitted personally from the scheme to defraud the financial institution or that the financial institution suffered a loss.

If you are convinced that the government has proved all of the elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of the elements, then you must find the defendant not guilty of this charge.

**Authority**:  Pattern Crim. Jury Instr. 6th Cir. 10.03 (2022)

## <u>COUNT 5 (AGGRAVATED IDENTITY THEFT) (18 U.S.C. § 1028A)</u>

Title 18, United States Code, Section 1028A makes it a crime to transfer, possess, or use a means of identification during and in relation to certain other crimes such as Bank Fraud. For you to find the defendant guilty, the government must prove each of the following beyond a reasonable doubt:

1. That the defendant transferred, possessed, or used,

2. Without lawful authority;

3. A means of identification of another person;

4. That the defendant did so during and in relation to Bank Fraud as alleged in Count 3; and

5. That the defendant did so knowingly.

The government must prove that the defendant knew the particular numbers (or identifiers) belonged to another individual.

"Means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any -

(A) name, social security number, date of birth, official State or government

issued driver's license or identification number, alien registration number,

government passport number, employer or taxpayer identification number;

(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C) unique electronic identification number, address, or routing code; or

(D) telecommunication identifying information or access device.

"Access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

"Without lawful authority" means without a form of authorization recognized by law.

If you are convinced that the government has proved all of the elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of the elements, then you must find the defendant not guilty of this charge.

**Authority:** Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* § 1028A (Emily Deck Harrill, ed., 2018 Online Edition).

## COUNTS 6 – 15 (INTERSTATE THREATS) (18 U.S.C. § 875(c))

Title 18, United States Code, Section 875 makes it a crime to transmit in interstate commerce a threatening communication. For you to find the defendant guilty, the government must prove each of the following beyond a reasonable doubt:

1. That the defendant knowingly transmitted a communication in interstate or foreign commerce;

2. That the defendant subjectively intended the communication as a threat; and

3. That the content of the communication contained a "true threat" to kidnap or injure.

To prove the second element of a § 875(c) conviction, the Government "must establish that the defendant transmitted the communication 'for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat,' or, perhaps, with reckless disregard for the likelihood that the communication will be viewed as a threat."

To prove the third element of a § 875(c) conviction, "the Government must show that an ordinary, reasonable recipient who is familiar with the context in which the statement is made would interpret it as a serious expression of an intent to do harm."

While the government must prove that the communication was transmitted in interstate commerce, the government need not prove that the defendant knew the communication would be transmitted in interstate commerce.

While the government must prove that the communication was transmitted in interstate commerce, the government need not prove that the defendant knew the communication would be transmitted in interstate commerce.

**Authority:** Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* **§ 875 INTERSTATE THREATENING COMMUNICATIONS** 1028A (Emily Deck Harrill, ed., 2018 Online Edition).
.

**7.14 Evidence of Flight**

(1) You have heard testimony that after the crime was supposed to have been committed, the defendant fled or attempted to flee from prosecution.

(2) If you believe that the defendant fled or attempted to flee from prosecution, then you may consider this conduct, along with all the other evidence, in deciding whether the government has proved beyond a reasonable doubt that he committed the crime charged. This conduct may indicate that he thought he was guilty and was trying to avoid punishment. On the other hand, sometimes an innocent person may act for some other reason. The defendant has no obligation to prove that he had an innocent reason for his conduct.

**Authority:** Pattern Crim. Jury Instr. 6th Cir. 7.14 (2022)

## G.   PROPOSED VOIR DIRE QUESTIONS

1.      This case was investigated by FBI, Texas Department of Public Safety, Tennessee Bureau of Investigation, Louisville Metro Police, Brentwood Tennessee Police, and the Hamilton County Ohio Sheriff's Office.   Has anyone had any contact, one way or another, good or bad, with this or any other law enforcement agency?

2.      There will be local law enforcement and federal agents testifying in this case. Has anyone had a really good or bad experience with the United States Attorney's office, a police officer, or federal agent-even something like getting a traffic ticket you did not think you deserved-that you think would affect your ability to listen to his or her testimony and give it the same weight as any other witness?

3.      Has anyone served in law enforcement in his or her community or elsewhere?  Family members?

4.      Have any of you ever been the victim of crime, or do you have a friend or family member who has been the victim crime?  Has anyone had an elderly loved one be the victim of theft by a domestic worker or senior health care provider?    Has anyone invested or been the victim of investment fraud?

5.      You will likely hear testimony from several witnesses who are government employees. Can you fairly evaluate the credibility of government witnesses by considering all available evidence in determining if those witnesses are truthful in their testimony?

6.      At the end of the case the Court will instruct you on the elements of each offense.  Those are the facts that the government must prove to you beyond a reasonable doubt.  That is their burden.  Will any of you hold the government to a different burden based on your expectations or require the government to prove to you something that is not in the instructions.  In other words, can you convict someone if the government has proven all the elements of the crime, but has not proven something else that you may be wondering about?

7.      Do all of you understand that you must set aside any personal feelings you may have about what the law ought to be if they conflict with the law contained in the Court's instructions? Is there anyone who thinks that they will not be able to follow the law that the Court gives you in the instructions?

8.      Are any of you employed by a law enforcement agency, or do you have friends or family members employed by law enforcement agencies?

9.      Have you or a close friend or family member ever been arrested or charged with a crime?

10.    Have you or a close friend or family member ever testified for a defendant in a criminal trial?

11.    Have you or a close friend or family member ever served time in a jail or prison?

12.    Have any of you ever served on a jury before?

13.    If you have served on a jury before, was it a civil or criminal case?

14.    If you have served on a criminal jury before, did you deliberate and reach a verdict in the case?

15.    If you did deliberate and reach a verdict, what was the verdict in the case?

16.    If you served on either a criminal or civil jury before, did you serve as the foreperson?

17.    If you served on either a criminal or civil jury before, is there anything about that experience that would prevent you from listening to the evidence in this case and bringing back a verdict based only on the evidence?

18.    Do you understand that in federal court, the punishment a defendant receives, if any, is to be imposed by the Court and your verdict must in no way be affected by your concern for what punishment would be proper?

19.    Does anyone work or have a family member that works for law enforcement?

19.    Do you understand that the duty of the Government is to prove guilt to the exclusion of a reasonable doubt, but the government is not required to prove guilt beyond all possible doubt?

20.    Do you understand that a defendant on trial is entitled to a presumption of innocence however, as with all presumptions, it may be overcome by competent evidence?

21.    Do you understand the law makes no difference between direct and circumstantial evidence and the weight to be given to it; that the burden is one of proof beyond reasonable doubt. Direct evidence is simply evidence like the testimony of an eyewitness which, if you

believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you conclude that it was raining.

22.     Are there any of you who, because of religious, philosophical, or any other reason, do not feel you could sit in judgment of these facts and vote to return a verdict of guilty regardless of the proof in this case?

23.     Are there any of you who have difficulty hearing, seeing, or sitting for long periods of time?

24.     Are there any of you that have events in your life presently that would distract you or divert your attention from the testimony and evidence of this case?


                              Respectfully submitted,

                               MICHAEL A. BENNETT
                               United States Attorney



                               s/ Joshua Judd
                               Joshua Judd
                               Assistant U.S. Attorney
                               717 West Broadway
                               Louisville, Kentucky 40202
                               PH: (502) 582-5911

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 27, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel for Bryan Conley.

s/ Joshua Judd
Joshua Judd
Assistant U.S. Attorney