UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

vs.                                   CRIMINAL ACTION NO. 3:23-CR-00014-DJH

BRYAN DOUGLAS CONLEY                                          DEFENDANT

## RESPONSE TO MOTION FOR SEPARATE TRIALS
### *ELECTRONICALLY FILED*

The United States opposes the defendant's Motion for Separate Trials, DN 50, in which

he requests Count 1 and 2 be severed from Counts 3 through 15. The Court should deny the

defendant's motion because Count 1 and 2 is properly joined with Counts 3 through 15 and

because the defendant failed to show actual prejudice by the joinder.

Counts 1 and 2 are properly joined with Counts 3 through 15 because it is of the same or

similar character and is connected with or constitutes parts of a common scheme or plan.  The

speaking indictment lays out in specific detail the common scheme, plan, and factual similarities

between counts 1 and 2 and the remaining counts involving minor female victim 1 and female

victim 2.  Conley executed a scheme and common plan to use an online platform to cast a lure

for victims.  His scheme and plan, and similar character of his crime, was the same for both

victims utilizing lies and misrepresentations to manipulate them for sex and ultimately steal

personal property.  Whether the scheme and plan netted 1 or fifteen victims, it was all part of the

same common scheme and plan executed by Conley.  The face of the indictment contains the

information supporting that this was a common scheme and plan and of the same and similar

character to support joinder.   Therefore, Conley's motion should be denied.

Conley raised two arguments to support his claim for severance.  First, he argued that

Fed. R. Crim. P. 8(A) mandated severance.  Second, he argues that he would suffer actual

prejudice under Fed. R. Crim. P. 14 , if the charges were not severed.  Both of his claims are without merit.   Since previous versions of the indictment are irrelevant to the claim, the United States will solely focus on the language contained on the face of the Indictment in DN 4 in Criminal Action No. 3:23-CR-00014-DJH.

## **BACKGROUND**

Beginning in November 2018, the defendant, Bryan Douglas Conley, used aliases and an online dating application, Plenty of Fish ("POF"), to lure and mislead victims for sexual activity and theft of their personal property. He then used his vehicle to transport these victims across state lines.

Conley was indicted on February 7, 2023, in the Western District of Kentucky.  DN 4. Count 1 charged him with a violation of the Mann Act (18 U.S.C. Section 2421(a)) in which the defendant transported a minor victim between November 8 to November 12, 2018 interstate with the intent the minor victim engage in prostitution.  Count 2 charged Conley with Transporting a Minor in Interstate Commerce with the intent that she engage in prostitution or some other criminal offense (18 U.S.C. Section 2423).  Count 3 charged Kidnapping by Inveigle and Decoy (18 U.S.C. Section 1201(a)(1) of a second victim in late January 2019.  Conley was also charged with Bank Fraud (18 U.S.C. 1344), Aggravated Identity Theft (18 U.S.C. 1028A), and ten counts of Interstate Threats (18 U.S.C. 875(c) relating to text message threats sent to the second victim's elderly parents with ransom demands, all of which occurred during the course of the kidnapping. Relating to Counts 1 and 2, the defendant, beginning on or about November 8, 2018 contacted

minor female victim 1 using POF.

The factual allegations contained on the face of the Indictment related to Counts 1 and 2 and minor female 1 are recounted below.  See DN 4, para 1 through 24.  On or about November 8, 2018, using an online dating application, PlentyofFish.com ("POF"), Bryan Douglas Conley, used a fictitious online persona of "Bryant De Beers" ("Bryant") to inveigle and decoy a minor female 1 to meet with Conley.  He used a POF profile account with the username "loveiseasy1198". Using "loveiseasy1198," Conley then posed as "Bryant" and communicated with the POF account of minor female 1. "Bryant's" POF profile contained a photograph of a person that was not was not Conley. "Bryant" claimed to be a young man, a wealthy member of the "De Beer's family," and living in Nashville, Tennessee. In addition, the POF profile picture and pictures "Bryant" later sent to minor female showed "Bryant" to have caramel colored skin and to be tall and muscular.

"Bryant's" POF profile contained a photograph of a person that was not was not Conley, but of a muscular man. After briefly communicating on POF, Conley, posing as "Bryant," began communicating with minor female 1 via cellular device to cellular device text messaging.

Minor female 1 told "Bryant" that she was 17 years old.   Minor female 1 was susceptible because of her age and family status.  Initially "Bryant" and minor female 1 discussed developing a romantic relationship. "Bryant" later offered to pay minor female 1 $200,000 if she agreed to engage in sexual activity.  "Bryant" offered minor female 1 additional money if she brought in a friend to engage in sexual activity.  "Bryant" also promised to provide minor female 1 a new cell phone, a car, a new I.D., and cash, among other items.

On November 10, 2019, Conley solicited, received, and possessed, two videos of minor female 1.   The second video is a sexually explicit video of minor female 1.

"Bryant" coordinated to pick up minor female 1 on Saturday, November 10, 2018, and bring her to his residence in Nashville, Tennessee in order to have sex in exchange for money. However, "Bryant" sent his friend, Conley, to pick up minor female 1. Sometime in the morning hours of November 10, 2018, Conley, while driving a grey Ford Taurus, met minor female 1 at a park near her family residence in Pataskala, Ohio. Conley and minor female 1 departed towards Tennessee, drove for a few hours, and eventually stopped at a Super 8 hotel in La Grange, Kentucky where Conley rented a hotel room.

Conley transported minor female 1 to other locations in Kentucky and returned to the Super 8 Motel in La Grange, Kentucky.   Conley told minor female 1 that he could not bring her to meet "Bryant" that day because "Bryant" got into a vehicle accident. Conley communicated with minor female 1 over the next several days and did so while contemporaneously posing as "Bryant".

Conley drove minor female 1 and provided her a drink that made her feel tired and sleepy.  Minor female 1 continued to communicate via text message with "Bryant." "Bryant" told minor female 1 that he would pay her even more money if she had sex with Conley. On Sunday, November 10 and 11, 2018, Conley stayed in a hotel room with minor female 1. Conley offered minor female 1 money to engage in sexual activity with him.  On November 10, 2018. Conley engaged in sexual activity after offering minor female 1 money.  On November 11, 2018, Conley transported minor female 1 in his car and began driving towards Tennessee. Conley continued to use "Bryant," to communicate via text message with minor female 1 while they were together.  "Bryant" offered her more money for her to use POF, solicit sexual activity from another male and then to allow Conley to video record sexual activity.

Conley transported minor female 1 to meet an adult male in Jackson, Tennessee who agreed to have sexual intercourse with her in the presence of Conley.   Conley offered minor female 1 money for the sexual activity and watched minor female 1 and another adult male engage in sexual activity. Conley continued to transport minor female 1 and offered her money if he could tie her up with rope.

Conley drove minor female 1 towards a location in Texas.  "Bryant" then told minor female 1 to travel to Texas where "Bryant" had a property.   Minor female 1 requested to return home. Conley told her that he would return her to home in Ohio.  Conley did not return minor female 1 to her home and abandoned her at a gas station in Texas. Conley took her purse and phone.

Conley communicated with minor female 1 to offer her money for sexual activity and to create the false impression that she was communicating with "Bryant".  Conley was charged in Counts 1 and 2 with the aforementioned behavior.

Relating to Counts 3 through 15, and only 69 days later in January 2019, Conley again posed as a fictitious person on POF, this time as "Lance," when he contacted female victim 2. In addition to posing as a fictious person, the defendant lied to and misled female victim 2. claiming that "Lance" was a modeling agent. See DN 4, paragraphs 25 to 71.

The defendant met with female victim 2 several times. During those occasions, the defendant, under the ruse he was helping modeling agent "Lance," took clothed, nude, and sexual photos of her and engaged in sexual activity. On the final occasion and like he did with minor female victim 1 nearly two months prior, the defendant picked up female victim 2 and told her he would transport her to meet the fictitious person "Lance;" he never did. He offered various excuses as to why he could not bring her to "Lance." Instead, the defendant stole female

victim 2's purse and wallet then bound at her legs, feet, and gaged with rope, and transported her interstate. During the travel, the defendant used female victim 2's cellular telephone to communicate that he kidnapped female victim 2 and directed her mother to pay a ransom of $20,000 to ensure female victim 2's safe release. female victim 2's mother contacted law enforcement and the next day the FBI arrested the defendant when he attempted to pick up the ransom funds.

On or about January 26, 2019, using an online dating application, PlentyofFish.com ("POF"), Conley used the fictitious online persona of "Lance De Beers" ("Lance") to inveigle and decoy female victim 2 to meet with Conley.  Conley created a POF profile account with the username "loveiseasy2862." Using "loveiseasy2862," Conley then posed as "Lance" and communicated with the POF account of female victim 2.

"Lance's" POF profile contained a photograph of a person that was not was not Conley, but of a muscular man.  "Lance" claimed to be a young man, a wealthy member of the "De Beer's family," and living in Nashville, Tennessee. After briefly communicating on POF and on January 26, 2019, Conley, posing as "Lance," began communicating with female victim 2 via cellular device to cellular device text messaging. Initially "Lance" and female victim 2 discussed developing a relationship and the potential for female victim 2 to become a model.

On January 26, 2019, female victim 2 agreed to meet "Lance" at a location near Dover, Tennessee, located south of Fort Campbell, Kentucky.  "Lance" told female victim 2 that she would also meet his agent, "Brian." When female victim 2 arrived in Dover, Tennessee, and she met "Brian" aka Conley.

Conley communicated with female victim 2 using text messaging over the next several days and did so while contemporaneously posing as "Lance" and as "Brian."  Female victim 2

was susceptible because of her cognitive ability.  Conley, claiming his name was "Brian," falsely

represented he was a modeling agent and the modeling agent for "Lance."  Conley told her she

could be a paid model and took photographs of and filmed her for her modeling portfolio.

Conley told female victim 2 that "Lance" did not show up because he had been arrested.

On January 27, 2019, female victim 2 met Conley in a hotel in Brentwood, Tennessee, to

take photographs for female victim 2's modeling portfolio.   Conley asked female victim 2  for

her phone number, date of birth, address, and other information that he wrote down as notes.

Conley showed female victim 2 a sample modeling contract.  Conley provided female victim 2

with a red yeti mug containing an unspecified sports drink, which he told her she was required to

drink as part of the modeling contract.  Conley offered her money to participate in sexual activity

and photographs as part of the modeling contract.   female victim 2 did not stay overnight at the

hotel.

On January 28, 2019, Conley contacted female victim 2 and arranged for her to meet

"Lance" again in Dover, Tennessee, and participate in a photography shoot.  Female victim 2

traveled to Dover, Tennessee, and instead again met Conley.   He convinced Female victim 2 to

place her purse and an overnight bag in his car to travel to meet "Lance."  Female victim 2 and

Conley drove to a remote location in Dover, Tennessee.  Conley told Female victim 2 that

"Lance" had been arrested again and could not make it. Female victim 2 returned home.   Her

purse and wallet with her social security card and credit cards remained in Conley's car.

On January 29, 2019, at approximately 8:54 a.m., Conley attempted to log in to Female

victim 2's USAA online bank account without her authorization and permission. On January 29,

2019, at approximately 12:02 a.m., Conley, attempted to purchase prepaid credit cards using

Female victim 2 's USAA debit/credit card without female victim 2's authorization and

permission at Walmart in Oak Grove, Kentucky.  On January 29, 2019, Conley communicated

with Female victim 2 to schedule a modeling photography shoot in Louisville, Kentucky.

Conley met Female victim 2 in the parking lot of Kroger, 185 Adam Shepherd Parkway,

Shepherdsville, Kentucky.  On January 29, 2019, at approximately 1:30 p.m., Female victim 2

gave Conley her cell phone because he wanted to transfer videos from her phone to his phone.

Female victim 2 gave Conley her phone and password.

On January 29 and 30, 2019, Conley drove Female victim 2 to various locations

throughout Kentucky.  Conley drugged Female victim 2 's drinks with a sleeping aid making her

feel tired and sleepy during the long drives. Conley provided Female victim 2 what he described

as a sports drink that he required Female victim 2  to drink as part of the modeling contract so

they would be paid $500. Conley told Female victim 2 he had to watch her drink it.  Female

victim 2 fell asleep after consuming the drink.

On January 29, 2019, at approximately 1:37 p.m., Conley used Female victim 2 's phone

to send kidnapping ransom demands and threats to physically harm Female victim 2 to the

parents of Female victim 2. At or near the same time, Conley physically bound Female victim 2

for approximately 3 to 4 hours with rope and duct tape.  Conley refused to allow Female victim 2

's parents to talk with Female victim 2. Conley sent Female victim 2's parents a proof of life

photograph at approximately 10:00 p.m. on January 29, 2019.  The photograph showed Female

victim 2 covered with a blanket in the back seat of a car and with a rope wrapped with duct tape

binding her mouth.

Female victim 2 had intended to return home the night of January 29, 2019, but Conley

falsely claimed that he and "Lance" were law enforcement officers and Female victim 2 was the

target of a human trafficking ring and thus could not return home.  Conley falsely claimed that it

was unsafe for Female victim 2 to return to work or home and he would not return her iPhone to her.   Conley told Female victim 2 to stay down in the back seat of the car out of view for her safety.

On January 30, 2019, at approximately 3:30 p.m., a ransom payment of $400 and jewelry provided by Female victim 2 's parents was placed in paper bag and dropped at Tri-State international Trucks Inc., 200 J.W. Dickerson Dr., Oak Grove, Kentucky 42262 for Conley to retrieve. On January 30, 2019, at approximately 5:00 p.m., Conley retrieved the ransom payment from behind a dumpster at the Tri-State international Trucks Inc.in Oak Grove, Kentucky. Conley falsely told Female victim 2 that he was retrieving her wallet from "Lance" when he stopped to retrieve the ransom payment.

Conley told Female victim 2 that she would not be able to return home and would have to stay with him at a hotel the night of January 30, 2019, because it was still not safe for her to return home.   As a result of this conduct on or about and between January 26 and 30, 2019, Conley was charged with Counts 3 through 15.

## **ARGUMENT**

Counts 1 and 2 are properly joined with Count 3-15, because the offenses are of the same or similar character or are connected with or constitute parts of a common scheme or plan. In addition, the defendant is not prejudiced by the proper joinder because the evidence supporting Count 1 would be admissible in the trial of Count 2 and vice versa in accordance with Federal Rule of Evidence 404(b).

The Federal Rules of Criminal Procedure permit indictments to include two or more offenses against a defendant.

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--*are of the same or similar character*, or are based on the same act or transaction, *or are connected with or constitute parts of a common scheme or plan*.

Fed. R. Crim. P. 8(a) (italics emphasis added). Rule 8(a) is supposed "to promote the goals of trial convenience and judicial efficiency." *United States v. Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983). Rule 8(a) permits liberal joinder of counts as long as the counts have a "logical relationship." *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir.2005). "Similar charges include those that are somewhat alike, or those having a general likeness to each other." *United States v. Rivera,* 546 F.3d 245, 253 (2d Cir.2008) (internal quotation marks omitted).

However, and even if counts are properly joined, "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). A district court's severance ruling can only be disturbed on appeal by a showing the trial judge abused his discretion, which requires a strong showing of prejudice. *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006). "The movant must prove that joinder would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence." *Id* (citing *Zafiro v. United States*, 506 U.S.534, 539 (1993)).

Nonetheless, a clear and substantial public interest exists in holding consolidated trials. The law is well-settled that "defendants are not entitled to a severance merely because they might have a better chance of acquittal in separate trials." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Rather, "[t]he district court may, to the extent it is consistent with due process principles, construe [Rule 8(a)] broadly to 'promote the goals of trial convenience and judicial

efficiency.'" *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) (quoting *United States v. Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983)).  Consolidated trials afford defendants with prompt trials, they conserve the Court's time, they reduce congestion of trial dockets, and they lessen the burden on citizens who must sacrifice both time and money to serve as witnesses. Consolidated trials also avoid duplication, conserve public funds, and diminish inconvenience to everyone involved in the trial of a criminal case.

The Government needed only to allege facts showing that the acts or transactions described in Rule 8(a) "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED.R.CRIM.P. 8(a). *See United States v. Gooch*, 665 F.3d 1318, 1334–35 (D.C. Cir. 2012). "The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed.R.Crim.P. 8(a). "Similar charges include those that are somewhat alike, or those having a general likeness to each other." *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir.2008) (internal quotation marks omitted).

**A. Counts 1 and 2 are properly joined with Counts 3 through 15 because the offenses are of the same or similar character or are connected with or constitute parts of a common scheme or plan.**

Counts 1 and 2 and Counts 3 through 15 are offenses of the same or similar character or are connected with or constitute parts of a common scheme or plan. Between November 8, 2018 and January 27, 2019 and on two separate occasions, the defendant used POF to create fictitious persons ("Bryant" and "Lance" with the last name "De Beers") to deceive female victims (minor

female victim 1 and female victim 2) in order to transport them interstate and perform sexual

activity.  Counts 1 and 2 are of the same or similar character because both Count 1 (18 U.S.C.

§ 2414) and Count 2 (18 U.S.C. § 2423)[1] and Count 3 (18 U.S.C. § 1201(a)(1)) necessitate the

unlawful transportation of another in interstate commerce for sex and theft of personal property.

In addition, the defendant committed both Counts 1, 2, and 3 with sexual motivation.

"Under Rule 8(a), Federal Rules of Criminal Procedure, joinder of offenses is ordinarily

appropriate where, as here, the specific counts refer to the same type of offenses, occurring over

a relatively short period of time, and the evidence as to each count of necessity overlaps."

*Johnson v. United States*, 356 F.2d 680, 684 (8th Cir. 1966) (no severance for five counts

charging violation of the Mann Act of interstate transportation of females for prostitution over a

four month period).

Counts 1 and 2 and Counts 3 through 15 are connected with or constitute parts of a

common scheme or plan because the defendant used the same manner in means to commit both

offenses – creating fictious persons, using POF to meet the victims, lying to the victims about the

fictious persons, lying to the victims that the defendant would transport the victims to meet the

fictious persons, generally and committing these acts to seek sexual activity with the female

victims.  In *United States v. Jacobs*, 244 F.3d 503, 507 (6th Cir. 2001), the Court properly

permitted the joinder of two counts charging kidnapping, in violation of 18 U.S.C. § 1201, for

two separate abductions of the defendant's spouse because the abductions were part of a

common scheme.  For two offenses to be "the same or similar," "the two classes of offenses

must be 'substantially similar in character.' " *See United States v. Jackson*, No. 1:18cr695, 2019

WL 5802702, at *3 (N.D. Ohio Nov. 7, 2019) (quoting *United States v. Hersch*, 297 F.3d 1233,

---

[1] The indictment noted that the factual allegations are incorporated by reference from Count 1.

1242 (11th Cir. 2002)). Courts generally examine several factors in analyzing the question of whether the offenses are substantially similar, including "the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crime and the identity of the victims." *See id.* (quoting *United States v. Jawara*, 474 F.3d 565, 578 (9th Cir. 2007)).

**B. The defendant is not prejudiced by the joinder of Count 1.**

Joinder of Count 1 and 2 with the remaining counts does not "appear to prejudice the defendant." Fed. R. Crim. P. 14(a). To prevail on a severance motion, "a defendant must show compelling specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005). The defendant cannot meet this heavy burden because the evidence supporting Counts 1 and 2 would be admissible in separate trial for Counts 3-15 in accordance with Federal Rule of Evidence 404(b). Therefore, if the evidence of Count 1 and 2 would be presented in a separate trial for Counts 3-15, then the defendant cannot be prejudiced by joinder.

Rule 404(b) allows evidence of other acts to prove relevant facts other than the defendant's character." Fed. R. Evid. 404(b). The rule provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such "evidence may be admissible for another purpose," however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Trial courts employ a three-part test to determine the admissibility of 404(b)(2) evidence. *See United States v. Mack,* 729 F.3d 594, 601 (6th Cir.2013). First, a court determines whether there is sufficient evidence that the crime, wrong, or

other act took place. *See id.* Second, it decides whether evidence of that conduct is offered for a proper purpose, *i.e.,* "whether the evidence is probative of a material issue other than character." *Id.* Third, the court considers whether any risk of unfair prejudice substantially outweighs the evidence's probative value.

Here, the evidence is not offered to prove conformity, but rather to show identity, modus operandi, and common plan or scheme. The defendant's conduct related to Counts 1 and 2 are sufficiently similar to the charged crimes to establish the defendant's pattern, modus operandi, or "signature." *United States v. Allen*, 619 F.3d 518, 524 (6th Cir.2010). Counts 1 and 2, and the remaining counts common features that make it very likely the offenses were perpetrated by the same person. But the crimes need not "be identical in every detail." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir.2006) (quoting *United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir.1982)). Conley's Modus Operandi was to utilize a scheme by impersonating induvial through fraudulent communications to entice each victim through false statements to engage in sexual activity and interstate transportation based on false statements and misrepresentations utilizing online dating platforms and text applications. In each instance, Conley offered each victim money for sexual activity through a false persona controlled by Conley. In both instances Conley took personal property belonging to each victim

**C. The Court could consider a limiting instruction to the jury.**

If the Court determines there is a risk of prejudice, the Court can include a limiting instruction or include a number of cautionary statements in its instructions to the jury to reduce the possibility of prejudice with respect to a joint trial. *Cf. Zafiro,* 506 U.S. at 540, 113 S.Ct. 933. Here however, the proof at trial would not be complicated or complex, and the nature of the offenses and the evidence is of such a character that the parties and the Court could reasonably

expect a jury to make separate and intelligent evaluations of the evidence as it applies to the charges. *United States v. Jacobs*, 244 F.3d 503, 507 (6th Cir. 2001). The defendant bears the burden of showing sufficient prejudice to warrant severance, and "this high burden cannot be met though conclusory statements of potential prejudice." *See United States v. Helms*, 2019 WL 4143298, at *1 (W.D. Ky. Aug. 30, 2019). Multiple counts are routinely tried jointly in a single trial. And to the extent certain evidence should not be considered with respect to a particular count, the parties may request limiting instructions. *See Zafiro at* 539 (separate trials may not be necessary when a less drastic measure will cure potential prejudice). *See also United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011) (noting that "[j]urors are presumed to follow instructions"). The defendant has not identified any specific trial right that is likely to be compromised or explained why measures less drastic than severance are insufficient to cure potential prejudice. *United States v. Essex*, No. CR 5:20-057-DCR, 2021 WL 798844, at *1–2 (E.D. Ky. Mar. 2, 2021).

## CONCLUSION

Conley executed a scheme and common plan to use POF to cast a lure for victims. He scheme was the same for both victims utilizing lies and misrepresentations to manipulate them for sex and ultimately steal personal property. Whether the scheme and plan netted 1 or fifteen victims, it was all part of the same common scheme and plan executed by Conley. The face of the indictment contains the information supporting that this was a common scheme and plan and of the same and similar character to support joinder. This Court, accordingly, should deny the

defendant's motion to sever counts because they were properly joined and because the joinder does not prejudice the defendant.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

*s/*__***Joshua Judd***__

Joshua Judd
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky  40202

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel for Bryan Conley.

*s/*__***Joshua Judd***__

Joshua Judd
Assistant U.S. Attorney

16