UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,     Plaintiff,

v.     Criminal Action No. 3:23-cr-14-DJH

BRYAN DOUGLAS CONLEY,     Defendant.

\* \* \* \* \*

## MEMORANDUM AND ORDER

Defendant Bryan Douglas Conley is charged with interstate transportation for prostitution (Count 1), interstate transportation of a minor with intent to engage in criminal sexual activity (Count 2), kidnapping by inveigle and decoy (Count 3), bank fraud (Count 4), aggravated identity theft (Count 5), and interstate threats (Counts 6–15). (Docket No. 4) The United States filed two notices of intent to present certain evidence at trial and moved to admit that evidence. (D.N. 23; D.N. 24) The defense objects. (D.N. 54; D.N. 55) At the December 6, 2023 final pretrial conference, the parties jointly requested pretrial rulings on the government's filings (D.N. 23; D.N. 24), which were not docketed as motions. Construed here as motions in limine, the Court will grant both as explained below.

**I.**

The government moves to admit the following prior-acts evidence:

(1) that the defendant communicated through his cellular device using third party applications that created additional telephone numbers, in addition to his Mobile Station International Subscriber Directory Number (MSISDN) obtained through Verizon, and posed as people other than himself, and (2) that the defendant produced and possessed child sexual abuse material ("CSAM") of [Minor Female 1].

(D.N. 23, PageID.157) The government contends that this evidence is admissible as res gestae, or in the alternative, is admissible under Federal Rule of Evidence 404(b). (*Id.*, PageID.159–160)

1

The defense argues that "the United States has not established that either the videos Minor Female 1 allegedly made and sent to the Defendant, or the use of fictitious names and VoIP telephone numbers, are admissible either as *res gestae* or under any specific portion of [Rule] 404(b)." (D.N. 54, PageID.504)  As explained below, the Court need not reach whether the evidence is admissible under Rule 404(b) because it is admissible as res gestae.[1]

Generally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  But Rule 404(b)(2) lists several exceptions that allow evidence of uncharged conduct to be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  In contrast, res gestae, also known as background evidence, refers to evidence of uncharged acts "that [is] inextricably intertwined with the charged offense" and thus is not character evidence and need not fall under one of the exceptions in Rule 404(b) to be admissible. *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* (quoting *Hardy*, 228 F.3d at 748). To be admissible, background evidence must be related to the charged offense by temporal

---

[1] The phone-number evidence and CSAM videos may also be admissible under 404(b), but the government's filing (D.N. 23) does not provide the information necessary to reach that conclusion at this point.  A significant portion of the government's Rule 404(b) analysis appears to be based on the facts of a different case. (*See id.*, PageID.162–63 (arguing that "the Indiana bank robbery constitutes uncharged conduct which arose out of the same series of transactions as the charged offenses"))

proximity, causation, or "spatial connections." *Id.* (quoting *United States v. Clay*, 667 F.3d 689, 698 (6th Cir. 2012)).

Here, the evidence that Conley used multiple phone numbers to communicate with the alleged victims and pose as other people is inextricably intertwined with and contributes to the story of the charges that he used aliases and a fictitious profile when communicating with the victims. (*See* D.N. 4) Without this evidence, it would be more difficult for the jury to understand how Conley convinced the victims that they were talking to multiple people, rather than just Conley. Moreover, Conley used the phone numbers to facilitate the commission of the crimes charged. This evidence is temporally related to the charged offenses, "arises from the same events as," and is "directly probative of" those offenses. *Adams*, 722 F.3d at 810. It is therefore admissible as background evidence. *See id.*

Similarly, the evidence that Conley solicited and received CSAM videos from Minor Female 1 is inextricably intertwined with, and "a prelude to" Counts 1 and 2, which allege that Conley transported Minor Female 1 interstate for prostitution or other criminal sexual activity. (*See* D.N. 4, PageID.45–49) Conley argues that the CSAM videos are not admissible because the videos were produced by Minor Female 1 and sent to Conley willingly. (D.N. 54, PageID.501; *see* D.N. 4, PageID.46) But this argument does not conflict with the conclusion that the videos constitute res gestae. According to the government, Conley requested those videos while messaging the victim using a fictitious profile. And he received those videos on or around the day he met Minor Female 1 in person and ultimately began to drive her to Tennessee to have sex with her in exchange for money. (D.N. 4, PageID.46; D.N. 23, PageID.158) The evidence of those videos may help explain how Conley established a relationship with the victim prior to meeting her in person. The video evidence also shows that Conley sought out the victim for sexual

purposes. In other words, the exchange of the CSAM videos was "a prelude to the charged offense[s]." *Hardy*, 228 F.3d at 748. Because Conley allegedly received the videos in the build-up to the crimes charged, the CSAM videos are also admissible as background evidence. *Adams*, 722 F.3d at 810. Accordingly, the Court will grant the government's motion.

## II.

The government also gave notice of its intent to admit flight evidence as evidence of guilt under Rules 402, 403, and 404(b) of the Federal Rules of Evidence. (D.N. 24, PageID.164) The United States proffers the following facts. After the government filed a superseding indictment in the prior prosecution of this case, *United States v. Conley*, 3:19-CR-19-DJH (W.D. Ky. Feb. 1, 2019), Conley failed to appear for his arraignment after telling "his counsel that his family had been in an accident." (D.N. 24, PageID.165) The government tracked Conley's ankle monitor to an area near Bowling Green, Kentucky, and upon arriving there, the "FBI recovered a cut ankle monitor." (*Id.*) A manhunt followed, and law enforcement ultimately captured Conley in Ohio. (*Id.*) The terms of Conley's supervised release only allowed him to travel to Kentucky and Texas. (*Id.*, PageID.166)

According to the United States, "the admission of [the] evidence that Conley purposefully cut his monitoring device while on home detention and fled from law enforcement to Ada, Ohio will further illustrate Conley's guilt given that he fled Kentucky to avoid his ongoing legal troubles." (*Id.*) Conley argues, however, that this evidence is not admissible as "other acts" evidence under Rule 404(b). (D.N. 55, PageID.508)

"Flight evidence comes in as an admission of guilt by conduct." *United States v. Oliver*, 397 F.3d 369, 376 (6th Cir. 2005). "Courts, however, have 'consistently doubted the probative value in criminal trials' of flight evidence." *Id.* (quoting *Wong Sun v. United States*, 371 U.S. 471,

4

483 n.10 (1963)).  So "before a jury may be permitted to consider flight as evidence of guilt, the district court must determine that the flight evidence has genuine probative value." *Id.*  The Sixth Circuit instructs that

> the probative value of flight evidence "depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of crime charged."

*United States v. Atchley*, 474 F.3d 840, 853 (6th Cir. 2007) (quoting *United States v. Dillon*, 870 F.2d 1125, 1127 (6th Cir. 1989)).  The required "inferences must be reasonably supported by the evidence."  *Oliver*, 397 F.3d at 376 (internal quotation marks omitted) (quoting *Dillon*, 870 F.2d at 1127).  Here, Conley does not contest the first inference (D.N. 55, PageID.508), so the Court will evaluate the remaining three.

The second and third inferences "involve examination of two interrelated factors: immediacy and the defendant's knowledge that he is in trouble with the law."  *Dillon*, 870 F.2d at 1128.  "[T]he timing of the flight must itself indicate the sudden onset or the sudden *increase* of fear in the defendant's mind that he or she will face apprehension for, accusation of, or conviction of the crime charged."  *Id.*  Immediacy is less relevant when the defendant knows of the charges against him.  *Oliver*, 397 F.3d at 376 (citing *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1106 (9th Cir. 1979)).

Here, the second and third inferences are "reasonably supported by the evidence."  *Id.*  Based on the facts provided by the government, Conley cut off his ankle monitor and fled knowing that a superseding indictment had been filed against him.  The summons scheduling Conley's arraignment was returned executed on June 6, 2019.  (D.N. 24, PageID.165)  And the day before the arraignment—June 19, 2019—Conley filed a motion to waive his personal appearance based

upon an allegedly contrived car accident story. (*Id.*, PageID.165–66) Conley signed the motion acknowledging that he had received a copy of the superseding indictment. *Conley*, No. 3:19-CR-19-DJH, ECF No. 26-1. So Conley knew that additional charges had been filed against him; the fact that he allegedly fled immediately after the superseding indictment instead of immediately after the alleged crime does not foreclose the inference that he fled with consciousness of guilt of the crimes charged. *See Oliver*, 397 F.3d at 376–77.

Further, the evidence reasonably supports the required inference from Conley's guilty conscience to actual guilt of the crimes charged in this case. *See Atchley*, 474 F.3d at 853. Conley "points to no evidence that he was facing other charges or that he had another motivation" to remove his ankle monitor and flee to a prohibited state "unrelated to escaping" his prosecution. *United States v. Perez-Martinez*, 746 F. App'x 468, 476 (6th Cir. 2018). According to the government, when he was captured by the FBI, Conley told the authorities that "someone held a gun to his head and made him do the things he did." (D.N. 24, PageID.166) But the defense has identified no evidence that supports this claim. *See Perez-Martinez*, 746 F. App'x at 476. Thus, all four inferences are satisfied here, and the government has demonstrated the probative value of the proffered flight evidence. *See Atchley*, 474 F.3d at 853.

Finally, the Court must determine whether the probative value of the flight evidence is outweighed by the danger of unfair prejudice it presents. *See Dillon*, 870 F.2d at 1126 (citing Fed. R. Evid. 403). The Sixth Circuit has adopted a three-step test for courts deciding whether to admit evidence under Rule 404(b):

> First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred. Second, the district court must make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b). Third, the district court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403.

*United States v. Rios*, 830 F.3d 403, 426 (6th Cir. 2016) (quoting *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001)). The Court concludes that the proffered flight evidence is more probative than prejudicial.

First, the government has provided sufficient evidence that Conley in fact fled from Kentucky, which Conley does not appear to dispute. (*See* D.N. 55, PageID.507) Second, the government contends that "[t]he flight evidence is not offered to show the character of the defendant but is used to show the guilt by conduct." (D.N. 24, PageID.170) The Sixth Circuit permits flight evidence to "come[] in as an admission of guilt by conduct," *Oliver*, 397 F.3d at 376, and the Court concluded above that the flight evidence has probative value. Finally, the flight evidence does not unfairly prejudice Conley. Conley argues that "the probative value of this proffered evidence is substantially outweighed by the danger of unfair prejudice" because "of the potential for conjecture and speculation on behalf of a jury in drawing an inference of consciousness of guilt." (D.N. 55, PageID.509) But the Court also explained above why the inference of consciousness of guilt is reasonably supported by the evidence. In sum, the government has demonstrated the probative value of the flight evidence, and Conley has failed to identify any unfair prejudice that may result from the admission of such evidence. The evidence is therefore admissible under Rule 403, and the Court will grant the government's motion. *See Dillon*, 870 F.2d at 1126 (citing Fed. R. Evid. 403).

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The government's motion in limine to admit evidence of Conley's alleged additional telephone numbers and the CSAM videos of Minor Female 1 as res gestae (D.N. 23) is **GRANTED**. The defendant's objection (D.N. 54) is **OVERRULED**.

(2) The government's motion in limine to admit evidence of flight under Rule 404(b) (D.N. 24) is **GRANTED**. The defendant's objection (D.N. 55) is **OVERRULED**.

December 8, 2023

David J. Hale, Judge
United States District Court